# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JUDY SCHUTTER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | 05 C 998 |
| | ) | |
| WYETH, INC., et al., | ) | |
|     Defendants. | ) | |

## MEMORANDUM AND ORDER

After a years-long regimen on hormone replacement therapy drugs from Wyeth, plaintiff Judy Schutter developed metastatic, hormone-receptor positive breast cancer. She subsequently filed a multi-count complaint against Wyeth and related defendants based on diversity jurisdiction. Discovery is currently proceeding before this court as this case is no longer proceeding as part of multi-district litigation due to the progression of Ms. Schutter's cancer. During their depositions, Wyeth asked three of Ms. Schutter's treating physicians to opine regarding the cause of breast cancer. Ms. Schutter's motion to strike this testimony is before the court. For the reasons discussed below, the motion is granted.

## I. Background

In 1996, on the advice of her gynecologist, Ms. Schutter began a multi-year course of hormone replacement therapy ("HRT") to alleviate menopause symptoms. Her treatment plan included the hormone replacement medications Premphase, Prempro, and Provera (collectively, "hormone replacement drugs"). Ms. Schutter began taking Premphase in 1996, and, by 1998, switched to Prempro and later Provera. In September of 2000, Ms. Schutter felt a lump in her right breast. Her then-treating physician, Dr. Ramona Slupik, ordered a diagnostic mammogram. By November of 2000, Ms. Schutter stopped her HRT regimen because she had been diagnosed

with metastatic, hormone-receptor positive breast cancer that eventually spread to her lungs and liver.

Hormone replacement therapy was first recognized as a viable treatment for menopausal discomfort in 1942, when Wyeth received market approval for the hormone replacement drug Premarin. In her complaint, Ms. Schutter alleges that over the years that HRT was widely used, hormone replacement drug manufacturers, including the defendants, knew these medications placed patients at risk for a variety of potential serious, life-threatening complications.

Some doctors believe that a woman's use of HRT and a subsequent diagnosis of breast cancer are related. Ms. Schutter asserts that HRT caused her cancer. Over the course of her HRT regimen and breast cancer treatment, Ms. Schutter relied primarily on three treating and prescribing physicians: Dr. Ramona Slupik, her obsetetrician-gynecologist; Dr. Ruth O'Regan, her original treating oncologist; and Dr. William Gradishar, her current treating oncologist. After Ms. Schutter filed suit, all three of her doctors were deposed. Ms. Schutter disclosed her doctors as fact witnesses but not experts. Wyeth did not disclose any of Ms. Schutter's doctors as experts.

During the doctors' depositions, Wyeth asked questions about risk factors and the cause of Ms. Schutter's breast cancer. In her motion to strike, Ms. Schutter contends that the defendants were not entitled to do so because her treating physicians are not expert witnesses. Alternatively, she asserts that their testimony about causation is inadmissible because it is not based on knowledge gained in their capacity as treating physicians, is an impermissible legal conclusion about causation, and is irrelevant since they did not need to consider causation to treat her cancer.

In response, Wyeth contends that the doctors are all fact witnesses so it was not required to submit expert disclosures under Rule 26 to be able to use their testimony. Next, it denies that the testimony at issue goes to causation. Instead, according to Wyeth, it flows from the doctors' treatment of Ms. Schutter. Next, Wyeth contends that Ms. Schutter's motion is premature as she is attempting to strike deposition, not trial, testimony. Finally, Wyeth argues that because discovery was ongoing when the parties' dispute about causation arose, Ms. Schutter cannot be unfairly prejudiced by the use of all of her doctors' testimony.

**II.     Discussion**

    **A.     Is This Motion Premature?**

Wyeth first suggests that the motion to bar is premature because it has not determined what evidence it intends to offer at trial and Ms. Schutter has not determined whether she will call her treating physicians to testify or, alternatively, designate portions of their depositions for use at trial. The court finds that clarifying the scope of permissible testimony at this point in the proceedings will help streamline trial preparation.

Second, Wyeth contends that a ruling now will prevent it from responding as events develop at trial, and asserts that it may need to use causation testimony from Ms. Schutter's treating physicians to impeach or rebut testimony presented at trial. If this position was correct, no court would be able to issue any pretrial evidentiary rulings. The court nevertheless clarifies that its rulings regarding Ms. Schutter's treating physicians are directed at the parties' cases in chief and do not prevent a party from presenting impeachment testimony. However, to the extent that any party believes it is entitled to ask a treating physician about causation, it must first raise this issue outside the presence of the jury.

Finally, Wyeth suggests that even if the use of causation testimony from Ms. Schutter's treating physicians is improper, any error is harmless because the court should promote the determination of cases based on all available evidence. This argument is flatly wrong. The rules of evidence apply, and the harmless error doctrine does not allow a party to introduce all of the evidence it wishes under the guise of a search for truth. The court will thus consider the merits of Ms. Schutter's motion.

B.     Admissibility of Causation Testimony From Treating Physicians

Ms. Schutter's motion to bar turns on the distinction between lay and expert witnesses. *See* Fed. R. Evid. 701 & 702. A lay witness may only testify about opinions or inferences which are: (1) rationally based on her perception, (2) helpful to a clear understanding of her testimony or the determination of a fact at issue, and (3) not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. Rule 701. "The last requirement is intended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *Von der Ruhr v. Immtech Intern., Inc.*, 570 F.3d 858, 862 (7th Cir. 2009) (internal quotations omitted), *quoting* Fed. R. Evid. 701 advisory committee note.

In turn, Federal Rule of Evidence 702, which governs the admission of expert witness testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Expert testimony includes opinions based on "scientific, technical, or other specialized knowledge," *id*., regardless of whether those opinions were formed during the scope of interaction with a party prior to the litigation. *See Musser v.. Gentiva Health Servs.*, 356 F.3d 751, 756-57 n.2 (7th Cir. 2004). Scientific evidence is admissible if it is relevant, reliable, grounded "in the methods and procedures of science," and consists of more than "subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–90 (1993). With these precepts in mind, the court turns to the questions posed to the doctors regarding causation.

### 1. Dr. Ramona Slupik

Dr. Ramona Slupik is Ms. Schutter's former obstetrician-gynecologist. In 1998, she switched Ms. Schutter from the hormone replacement drug Premphase to Prempro. Dr. Slupik last saw Ms. Schutter in September of 2000 when she ordered a diagnostic mammogram after Ms. Schutter thought she felt a lump in her right breast. In November of 2000, Dr. Slupik learned that Ms. Schutter had been diagnosed with metastatic, hormone-receptor positive breast cancer. Ms. Schutter currently seeks to bar Dr. Slupik from testifying about the cause of her cancer. She also seeks to exclude Dr. Slupik's responses to hypothetical questions posed by Wyeth.

With respect to causation, during Dr. Slupik's deposition, Wyeth asked her the question that all cancer patients must have: why? For example, Wyeth asked her, "So, in any event, in any given individual patient, HT, or hormone therapy, may be a risk factor for the development of breast cancer but it is in your view not a potential cause of breast cancer?" and Dr. Slupik responded, "That's correct[.]"

As noted above, a treating doctor is an expert if her testimony consists of opinions based on "scientific, technical, or other specialized knowledge" even if she formed her opinions when interacting with a party before litigation. *See Musser v. Gentiva Health Servs.*, 356 F.3d at 757-58; *see also Moore v. P & G-Clairol, Inc.*, No. 09 C 1723, — F. Supp. 2d —, 2011 WL 1002958, at *8-9 (N.D. Ill. Mar. 18, 2011) ("it does not matter . . . that a treating physician formed her opinions during the course of treating the plaintiff, rather than for purposes of the litigation"). The questions posed in this case about whether HRT causes breast cancer call for answers based upon "scientific, technical, or specialized knowledge" not possessed by a lay witness. *See Moore v. P & G-Clairol, Inc.*, 2011 WL 1002958, at *8-9 (excluding testimony from a treating physician that hair dye caused the plaintiff's injuries and noting that "[t]he requirement that treating physicians are properly disclosed is particularly justified in a product liability suit like this one, where expert testimony is critically important because such testimony is almost always required on matters of causation and the jury is often asked to resolve a 'battle of the experts'"). Thus, a treating physician who has not been designated as an expert may not offer opinions about causation.

Wyeth also posed hypothetical questions to Dr. Slupik by asking what she would have said if Ms. Schutter had asked her if HRT was a risk factor for breast cancer. In response, Dr. Slupik answered, "Well, I would have said there are some studies that suggest that estrogen replacement therapy is a risk factor for breast cancer." Under Rule 703, an expert may form an opinion or make inferences based on observations of facts made before trial or on facts presented at trial (*e.g.* hypothetical questions). Fed. R. Evid. 703. The parties agree, however, that Dr. Slupik is not testifying as an expert. "Speculation, regardless of whether it is part of an expert opinion or from a lay witness," is improper. *See, e.g., Ormond v. Anthem, Inc.*, No. 05 CV 1908,

— F.Supp.2d —, 2011 WL 2619618, at *18 (S.D. Ind. Jul. 1, 2011). Thus, Wyeth may not use any of Dr. Slupik's answers to hypothetical questions.

## 2. Dr. Ruth O'Regan

Dr. Ruth O'Regan was Ms. Schutter's original oncologist and treated her for nearly three years, beginning in Fall of 2000. Dr. O'Regan was not disclosed as an expert under Rule 26(a)(2)(A) and explicitly stated that she did not agree to provide expert testimony. Furthermore, Dr. O'Regan noted that she does not perform "any type of causality assessment" on her patients to determine what caused their breast cancer because it is irrelevant to her treatment plan.

During her deposition, Wyeth questioned Dr. O'Regan at length about causation. For example, it asked:

— Is adult weight gain a risk factor for breast cancer?

— Is obesity a risk factor for breast cancer?

— If something is a risk factor, does that mean it causes cancer?

— Would you agree with, as with other risk factors, that just because a woman takes hormone therapy that science can't say that the hormone therapy in fact caused the breast cancer?

— Do you agree that, as of today, it is not possible for physician to advise a patient with a reasonable degree of certainty that there is a specific cause or contributing factor to a case of breast cancer?

As with Dr. Slupik, any answers to questions about causation and risk factors constitute expert testimony and thus are inadmissible since Dr. O'Regan was disclosed as a treating physician. This conclusion is not altered by Wyeth's contention that the risk factor and causation testimony it elicited from Dr. O'Regan is "anti-causation" because it does not show what caused Ms. Schutter's cancer. Regardless of whether causation is cast in the positive

("does X cause cancer") or the negative ("does Y not cause cancer"), the result is the same: opinion testimony based on general medical knowledge regarding the reason Ms. Schutter developed breast cancer. *See Musser v. Gentiva Health Servs.*, 356 F.3d at 757-58. Accordingly, this portion of Dr. O'Regan's testimony is outside the scope of her knowledge as Ms. Schutter's treating physician and is, therefore, improper.

The court also notes that Wyeth also asked Dr. O'Regan, "So you don't do any type of causality assessment on your patient's breast cancer […] because it's not relevant to your treatment, correct?" Dr. O'Regan responded, "That's correct." The fact that Dr. O'Regan did not consider causation when treating Ms. Schutter is an additional reason she may not opine about causation. *Cf. Carpenter v. Ford Motor Co.*, No. 90 C 5822, 1992 WL 443436, at *2-3 (N.D. Ill. Dec. 14, 1992) (doctor providing treatment for anxiety necessarily had to inquire about the cause, so his conclusions about the reason his patient was experiencing stress were relevant).

### 3. Dr. William Gradishar

Dr. William Gradishar is an oncologist who began treating Ms. Schutter in Fall of 2003. Neither side disclosed him as an expert, he has never prescribed HRT, and he is only generally aware of medical literature correlating HRT with breast cancer. Like Dr. O'Regan, Dr. Gradishar does not consider what may have caused a patient's cancer when formulating a treatment plan.

Wyeth argues that it was entitled to ask Dr. Gradishar about the cause of Ms. Schutter's cancer because an analysis of hormone receptivity formed the basis for his treatment of Ms. Schutter. Specifically, Wyeth points to Dr. Gradishar's testimony that he prescribed Tamoxifen "to block the estrogen receptor" and thus slow the spread of the cancer. Wyeth's Response, Dkt. 97, Page ID#686. According to Wyeth, this testimony is a necessary factual backdrop for Dr.

Gradishar's testimony about his treatment of Ms. Schutter, so he may properly testify about the reasons her cancer has progressed. This is a back door way of approaching causation. The court fundamentally disagrees that decisions about how to treat cancer are necessarily based on the reasons why that cancer exists. *See Aurand v. Norfolk Southern Ry. Co.*, No. 08-CV-398, — F. Supp. 2d —, at *12 (N.D. Ind. Jul. 18, 2011) (excluding causation testimony from a treating physician who told his patient, during the course of treatment, that benzene exposure likely caused the patient's cancer as the doctor did not arrive at that opinion in the course of treatment since he provided it in response to a question from his patient and identifying the cause was not necessary to offer treatment). Thus, Dr. Gradishar's efforts to use a medication that affects hormones to manage Ms. Schutter's cancer do not open the door to testimony about the cause of her cancer.

### III. Conclusion

Ms. Schutter's motion to strike [Dkt. 93] is granted and causation testimony from Ms. Schutter's three treating physicians is barred as discussed in this order.

DATE:  September 28, 2011

_____
Blanche M. Manning
United States District Judge